UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Vittorio PEZZO,<br>    *Plaintiff*,<br><br>v.<br><br>Kilolo KIJAKAZI,<br>Acting Commissioner of the Social<br>Security Administration,[1]<br>    *Defendant*. | 3:21-CV-00702 (KAD)<br><br><br><br><br><br><br><br>JUNE 28, 2022 |

## MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge:

Plaintiff, Vittorio Pezzo, brings this administrative appeal pursuant to 42 U.S.C. § 405(g). Plaintiff appeals the decision of Defendant, Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner"), denying his application for disability insurance benefits pursuant to Title II of the Social Security Act ("Act") and for supplemental security income pursuant to of Title XVI of the Act. Plaintiff moves to reverse the Commissioner's decision on the basis that the Commissioner's findings are not supported by substantial evidence in the record and/or that the Commissioner did not render a decision in accordance with applicable law. Alternatively, Plaintiff seeks remand of this matter for further proceedings before the Commissioner on the basis that he did not receive a full and fair hearing. The Commissioner responds that the decision correctly applies applicable law and is supported by substantial evidence in the record and, accordingly, moves for an order affirming the Commissioner's decision. For the

---

[1] Plaintiff commenced this action on May 24, 2021 against Andrew M. Saul, former Commissioner of the Social Security Administration. On July 9, 2021, Kilolo Kijakazi became Acting Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Commissioner Kijakazi is automatically substituted for Andrew M. Saul as the named defendant. The Clerk of the Court is requested to amend the caption in this case to reflect same.

1

reasons set forth below, Commissioner's motion to affirm is GRANTED. (ECF No. 20) Plaintiff's motion to reverse or remand is DENIED. (ECF No. 18)

**Standard of Review**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(a); 1382c(a)(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3); 1382c(a)(3)(D). In addition, a claimant must establish that their physical or mental impairment or impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." *Id.* §§ 423(d)(2)(A); 1382c(a)(3)(B).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. §§ 404.1520; 416.920. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in §[§] 404.1509; [§ 416.909]" or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment

listed in Appendix 1 of the regulations;[2] (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform his past relevant work; and (5) if the claimant is unable to perform his past work, the Commissioner must finally determine whether there is other work in the national economy which the claimant can perform in light of their RFC, education, age, and work experience. *Id.* §§ 404.1509; 404.1520(a)(4)(i)-(v); 416.909; 416.920(a)(4)(i)–(v). The claimant bears the burden of proof with respect to Steps One through Four and the Commissioner bears the burden of proof as to Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Sczepanski v. Saul*, 946 F.3d 152, 158 (2d Cir. 2020).

The fourth sentence of § 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). And it is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin,* 523 Fed. Appx. 58, 59 (2d Cir. 2013). Thus, substantial evidence can support the Commissioner's

---

[2] Appendix 1 to Subpart P of Part 404 of C.F.R. 20 is the "Listing of Impairments."

findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can only reject the Commissioner's findings of facts "if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). Stated simply, "if there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013).

**Factual and Procedural History**

On August 16, 2018, Plaintiff filed an application for disability insurance benefits[3] pursuant to Title II of the Act[4] and supplemental security income[5] pursuant to Title XVI of the Act,[6] alleging a disability onset date of June 9, 2016. (Tr. 15) These claims were initially denied on December 12, 2018, and upon reconsideration on February 13, 2019. (*Id.*) Thereafter, a hearing was held before an Administrative Law Judge ("ALJ") on January 30, 2020. (*Id.*)

On September 25, 2020, the ALJ issued a written decision denying Plaintiff's application for benefits under Title II and Title XVI of the Act. (Tr. 15–29) At Step One, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of June 9, 2016. (Tr. 18) At Step Two, the ALJ determined that Plaintiff had a severe combination of impairments, which included: fibromyalgia; degenerative disc disease; left humerus fracture; depressive, anxiety, attention deficit hyperactivity; and substance use disorders. (*Id.*) At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations.[7]

---

[3] The regulations for disability and disability insurance are found at 20 C.F.R. § 404.900, *et seq.*
[4] 42 U.S.C. § 401 *et seq*. Plaintiff remained insured for disability insurance benefits through March 31, 2017. (Tr. 16)
[5] The regulations for supplemental security income are found at 20 C.F.R. § 416.1400 *et seq.*
[6] 42 U.S.C. § 1381 *et seq.*
[7] *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1 (listing qualifying impairments).

(Tr. 19) At Step Four, the ALJ found that Plaintiff had the RFC to perform light work[8] subject to several limitations, to include that Plaintiff could only occasionally push and pull objects with his left upper extremity and occasionally climb ladders, ropes or scaffolds. (Tr. 21) The ALJ found that Plaintiff could frequently climb ramps and stairs, stoop, balance, kneel, crouch and crawl. (*Id.*) The ALJ further found that Plaintiff could perform simple, routine tasks but not at a strict, production rate pace, and can execute simple, routine instructions. (*Id.*) Accordingly, the ALJ determined that Plaintiff was capable of performing his past relevant work as a landscape laborer because this work does not require the performance of work-related activities precluded by his RFC. (Tr. 27) Alternatively, at Step Five, the ALJ determined that, in addition to his past relevant work, there were a significant number of jobs in the national economy that Plaintiff also could have performed such as a maid, cafeteria worker, or mail clerk. (*Id.*) The ALJ thus concluded that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Act from the alleged onset date of June 9, 2016, through the date of decision, September 25, 2020. (Tr. 29), and was therefore not entitled to benefits under Title II of the Act or supplemental security income under Title XVI of the Act.[9] (*Id.*) This timely appeal followed.

**Discussion**

Plaintiff claims that the ALJ's determination that he was not entitled to disability insurance benefits or supplemental security income is predicated on legal error and is not supported by substantial evidence. Plaintiff advances three arguments in this appeal: that the ALJ (1) "relied on largely his own opinion, after minimizing multiple physician opinions;" (2) "failed to compose an

---

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . If someone can do light work, [courts should] determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b); 416.967(b).
[9] On April 9, 2021, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1)

RFC description encompassing [Plaintiff's] actual impairments;" and (3) "misevaluated [Plaintiff's] past work history, making erroneous Step Four findings."[10] (ECF No. 18-1 at 2) The Commissioner rejects Plaintiff's claims and argues that substantial evidence supports that ALJ's decision that Plaintiff was not disabled under the Act. Upon review of the record evidence, the Court concludes that the ALJ's decision that Plaintiff was not disabled during the relevant time period and thus not entitled to disability insurance benefits or supplemental security income was a correct application of the law and is supported by substantial evidence.

    1.   <u>Substantial Evidence Supports the ALJ's Evaluation of Opinion Evidence</u>

Plaintiff claims that the ALJ erred in his evaluation of the opinion evidence of record. Specifically, Plaintiff argues that the ALJ erred when finding the opinion of medical expert Rachna Soriano, D.O., to be unpersuasive and that had he found the opinion persuasive, he would have necessarily concluded that Plaintiff's impairments equaled the severity requirements of listing 1.04(C). The Commissioner contends that substantial evidence supports the ALJ's evaluation of the opinion evidence. The Court agrees with the Commissioner.

For claims filed on or after March 27, 2017, like Plaintiff's, "[the Commissioner] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a); *Schillo v. Kijakazi*, 31 F.4th 64, 71 n.1 (2d Cir. 2022). "Statements about whether or not [a claimant's] impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1" are "inherently neither valuable nor persuasive to the issue of whether [the claimant is] disabled or blind under the Act." 20 C.F.R. §§ 404.1520b(c)(3)(iv); 416.920b(c)(3)(iv). "The most important factors [the

---

[10] Although Plaintiff orders these issues differently in his briefing, the Court addresses them in accordance with the regulations' sequential evaluation process.

Commissioner] consider[s] when . . . evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . ." 20 C.F.R. §§ 404.1520c(a); 416.920c(a).[11] The regulations therefore require the Commissioner to "'explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [its] determination or decision.' *Id*. §[§] 404.1520c(b)(2); [416.920c(b)(2)]." *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022).

On July 1, 2020, Dr. Soriano, a reviewing medical source, completed a medical statement regarding Plaintiff's physical ability to do work-related activities and a medical interrogatory regarding Plaintiff's physical impairments. (Tr. 2800–2809) Therein, Dr. Soriano opined that Plaintiff's impairments equaled the severity requirements of Listing 1.04(C) as of the alleged onset date of June 9, 2016.[12] (Tr. 2808) The ALJ found Dr. Soriano's opinion to be unpersuasive because it was "is not supported, and is not consistent with other evidence of record." (Tr. 19–20, 26) The ALJ explained that Dr. Soriano provided no narrative explanation in support of her opinion that Plaintiff's impairments equaled the severity requirement of listing 1.04(C), relied on limited

---

[11] "Supportability means '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.' 20 C.F.R. §[§] 404.1520c(c)(1); [416.920c(c)(1)]. Consistency means '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.' *Id*. §[§] 404.1520c(c)(2); [416.920c(c)(2)]." *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022).

[12] Dr. Soriano opined that Plaintiff had the following limitations: Plaintiff could occasionally lift up to twenty pounds and occasionally carry up to ten pounds. (Tr. 2800) Plaintiff could sit four hours at a time and six hours total during an eight-hour workday, and could stand or walk one hour at a time and one hour total during an eight-hour workday. (Tr. 2801) Plaintiff could frequently and bilaterally reach in all directions, handle, finger, feel, push and pull. (Tr. 2802) Plaintiff could frequently operate left foot controls and occasionally operate right foot controls. (*Id.*) Plaintiff could occasionally balance and climb stairs and ramps, but could never crawl, crouch, kneel, stoop, or climb ladders or scaffolds. (Tr. 2803) Plaintiff could occasionally tolerate exposure to moving mechanical parts and operating a motor vehicle, but could never tolerate exposure to unprotected heights, humidity, wetness, pulmonary irritants, extreme temperatures or vibrations. (Tr. 2804) Plaintiff could tolerate moderate noise exposure. (*Id.*) Dr. Soriano noted that Plaintiff had difficulty bending, climbing, squatting, and kneeling. (Tr. 2807) Dr. Soriano further observed that Plaintiff had limited flexion and extension, minimal disc bulging, minor spinal stenosis, and evidence of radiculopathy. (Tr. 2808)

medical findings from four to five years prior to the alleged onset date and did not reference any medical evidence from the relevant time period following the alleged onset date. (Tr. 20, 26) The ALJ also noted that Dr. Soriano's opinion is inconsistent with that of Richard Jaslow, M.D., another reviewing medical source.[13] (Tr. 20) The ALJ ultimately concluded that Plaintiff's impairments do not meet or equal the severity requirement of Listing 1.04 because "there is no evidence of the requisite arachnoiditis, pseudoclaudication, or nerve root compromise with motor loss, sensory loss or reflex loss." (Tr. 19)

In evaluating the persuasiveness of Dr. Soriano's medical opinion, the ALJ properly considered the factors found at 20 C.F.R. §§ 404.1520c(c) and 416.920c(c), and explained its consideration of the supportability and consistency factors as required by the regulations. *Loucks*, at *1. The ALJ specifically explained that Dr. Soriano's opinion cited to medical records from well before the alleged onset date and was not supported by medical records from the relevant period. The ALJ further identified inconsistencies between Dr. Soriano's opinion and other relevant evidence of record, including the expert opinion of another reviewing medical source. For example, Dr. Soriano identified right leg weakness in support of Plaintiff's assessed limitations with respect to lifting and carrying. (Tr. 26, 2800) The ALJ observed, however, that multiple examinations of Plaintiff since the alleged onset date of June 9, 2016 revealed no weakness and

---

[13] Plaintiff accuses the ALJ of seeking out Dr. Jaslow's opinion in a "blatant" effort to find unfavorable evidence after the ALJ received Dr. Soriano's opinion. Plaintiff offers no record evidence to support this speculative and frankly remarkable accusation. And it is the ALJ's affirmative obligation to develop the medical record as the ALJ sees fit. *See Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) ("[T]he ALJ, unlike a judge in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding, even if the claimant is represented by counsel.") (citation omitted; internal quotation marks omitted); *Canter v. Saul*, No. 3:19-CV-00157 (KAD), 2020 WL 887451, at *4 (D. Conn. Feb. 24, 2020) ("Although the claimant has the general burden of proving that he or she has a disability within the meaning of the . . . Act, 'the ALJ generally has an affirmative obligation to develop the administrative record' due to the non-adversarial nature of a hearing on disability benefits.") (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)); *see also* 20 C.F.R. § 702.338 ("The [ALJ] shall inquire fully into the matters at issue and shall receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters.").

normal gait, strength and sensation. (Tr. 20, 346, 377, 389–90, 435) Moreover, imaging revealed only "minor" spinal stenosis with no significant spinal stenosis or nerve root compression. (Tr. 1129, 1132) The Court concludes that substantial evidence supports the ALJ's evaluation of Dr. Soriano's medical opinion as unpersuasive.[14] *See Schillo*, 31 F.4th 64, 71 n.1 ("[the Commissioner] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)") (citing 20 C.F.R. §§ 404.1520c(a); 416.920c(a)). Notwithstanding, the Court considers whether substantial evidence supports the ALJ's ultimate determination that Plaintiff's impairments do not meet or equal the severity requirement of Listing 1.04.

"Section 1.04 of the List of Impairments . . . requires a highly specific, medically determinable finding of a spinal disorder, '(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.'" *Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 360 F. App'x 240, 244 (2d Cir. 2010) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04). "To satisfy Listing 1.04(C), a claimant must establish the initial criteria of disorders of the spine in Listing 1.04, along with, '[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.'"[15] *Alban v. Astrue*, No. 3:11

---

[14] Although not cited by the ALJ, the Court observes that despite Dr. Soriano's opinion regarding Plaintiff's significant limitations resulting from his condition, Dr. Soriano also opined that Plaintiff could: perform activities like shopping; travel without a companion for assistance; ambulate without using a wheelchair, walker, two canes or two crutches; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; prepare a simple meal and feed himself; care for his personal hygiene; and sort, handle, or use paper/files. (Tr. 2805)

[15] "[T]he inability to ambulate effectively is a condition of Listing 1.04(C)." *Alban*, 2012 WL 6728055, at *4 n.10. "The regulations state that the inability to ambulate effectively 'means an extreme limitation of the ability to walk.' . . . To ambulate effectively, plaintiff 'must be capable of sustaining a reasonable walking pace over a sufficient distance

CV 1119 CSH, 2012 WL 6728055, at *3 (D. Conn. Dec. 6, 2012), *report and recommendation adopted*, No. 3:11-CV-1119 CSH, 2012 WL 6728050 (D. Conn. Dec. 28, 2012) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(C)). "An impairment meets the requirements of one of these listings 'when it satisfies all of the criteria' of a listing." *Bouton*, 2007 WL 2889449, at *2 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)); 20 C.F.R. §§ 404.1525(c)(3); 416.925(c)(3)). "The claimant . . . bears the burden of proving that her impairments meet [a] particular Listing." *Rivera v. Berryhill*, No. 3:17-CV-01760 (SRU), 2019 WL 4744821, at *11 (D. Conn. Sept. 30, 2019); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007).

On August 15, 2020, Dr. Jaslow completed a medical statement regarding Plaintiff's physical ability to do work-related activities and a medical interrogatory regarding Plaintiff's physical impairments. (Tr. 2812–2821) Therein, Dr. Jaslow opined that Plaintiff's impairments did not meet or equal the requirements of any listing.[16] (Tr. 2816, 2820) Dr. Jaslow specifically noted that no exams support the requirements for Listing 1.04 because there were no objective signs of radiculopathy, arachnoiditis, and no symptoms of pseudoclaudication. (Tr. 2816) *See Rivera*, 2019 WL 4744821, at *11 ("To meet the severity criteria of listing 1.04, [claimant] must establish spinal arachnoiditis (for purposes of Listing 1.04(B)), pseudoclaudication (for purposes of Listing 1.04(C)) or the combination of nerve root impairment with consistently positive straight

---

to be able to carry out activities of daily living." *Bouton v. Astrue*, No. 3:04-CV-1756RNC, 2007 WL 2889449, at *3 (D. Conn. Sept. 29, 2007) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(1) and (2)).

[16] Dr. Jaslow opined that Plaintiff had the following limitations: Plaintiff could lift and carry up to ten pounds continuously, up to twenty pounds frequently, and up to fifty pounds occasionally. (Tr. 2812) Plaintiff could sit two hours at a time and seven hours total during an eight-hour workday, and could stand or walk two hour at a time and six hours total during an eight-hour workday. (Tr. 2813) Plaintiff could continuously and bilaterally handle, finger, feel, push and pull. (Tr. 2814) Plaintiff could continuously reach in all directions with his right hand, could occasionally reach overhead with his left hand, and could continuously reach in all other directions with his left hand. (*Id.*) Plaintiff could continuously balance, frequently climb stairs, ramps, ladders and scaffolds, and occasionally stoop, kneel, crouch and crawl. (Tr. 2815) Plaintiff could tolerate continuous exposure to all listed conditions, but could frequently tolerate exposure to moving mechanical parts and could never tolerate exposure to unprotected heights. (Tr. 2816) Plaintiff could tolerate very loud noise exposure. (*Id.*)

leg raise tests (for purposes of Listing 1.04(A))."). Neither did Dr. Soriano note any objective medical signs of arachnoiditis, symptoms of pseudoclaudication or consistently positive straight leg raise tests. "Conflicts in medical evidence are to be resolved by the ALJ." *Bouton*, 2007 WL 2889449, at *3. Here, the ALJ found Dr. Jaslow's opinion to be persuasive because it was supported by the record and relied on specific medical findings during the relevant period following the alleged onset date. (Tr. 25) Dr. Jaslow's opinion, and the record evidence upon which it relies provides substantial evidence in support of the ALJ's determination that Plaintiff's impairments did not meet or equal the requirements of listing 1.04.[17]

### 2. Substantial Evidence Supports the ALJ's RFC Determination

Plaintiff next claims that the ALJ erred in assessing his RFC by failing to adequately consider the extent of his limitations or identify the proper exertional level at which he can work. Specifically, Plaintiff argues that further limitations on handling, fingering, feeling and reaching were warranted, as well as a limitation to sedentary work. The Commissioner contends that substantial evidence supports the ALJ's finding with respect to Plaintiff's RFC and that the record does not warrant additional limitations. The Court agrees with the Commissioner.

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545; 416.945. The Commissioner's assessment of a claimant's RFC is based on all relevant medical and other evidence of record. *Id.* §§ 404.1545; 416.945. "[W]hen considering a claimant's symptoms, including allegations of pain, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the

---

[17] Plaintiff also argues that his conditions "have other elements of Listing 1.04(A) and (B)." (ECF No. 18-1 at 15) However, Plaintiff does not provide any expert opinion assessing his limitations as meeting the severity requirements of Listing 1.04(A) or (B). Moreover, the ALJ concluded that Plaintiff's impairments do not meet or equal the initial criteria of disorders of the spine in Listing 1.04, which is a prerequisite to establishing the elements of 1.04(A) or (B). *Alban*, 2012 WL 6728055, at *3. And Dr. Jaslow found that Plaintiff's condition did not meet or equal the severity requirements of any listing. "[Plaintiff's] disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it." *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016).

objective medical evidence. . . .'"[18] *Robinson v. Colvin*, No. 3:14 CV 683 JGM, 2015 WL 4759068, at *1 (D. Conn. Aug. 12, 2015) (*see* 20 C.F.R. §§ 404.1529(a); 416.929(a)). "[W]hile an ALJ is required to take the claimant's reports of pain and other limitations into account, 20 C.F.R. §[§] [404.1529;] 416.929, [an ALJ] is not require[d] to accept the claimant's subjective complaints without question." *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (internal quotation marks omitted).

> The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. §[§] 404.1529(b); [416.929(b)]. That requirement stems from the fact that subjective assertions of pain alone cannot ground a finding of disability. 20 C.F.R. §[§] 404.1529(a); [416.929(a)]. If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. [20 C.F.R. §§ 404.1529(a); 416.929(a)]. The ALJ must consider [s]tatements [the claimant] or others make about [her] impairment(s), [her] restrictions, [her] daily activities, [her] efforts to work, or any other relevant statements [she] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings. . . .

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted; citations omitted).

At the hearing, Plaintiff testified that he had been unable to work since the alleged onset date due to pain, particularly in his left arm and back. (Tr. 22) Plaintiff stated that, following a left arm crush injury in June of 2009, he continued to experience left arm pain, tingling and numbness, had difficulty lifting, bending, stooping and crouching, had to sit after walking or standing for five minutes, and was in agony after walking for five minutes. (*Id*.) After careful consideration of the

---

[18] "Objective medical evidence includes medical signs and laboratory findings[,] and such evidence is considered along with a claimant's statements or reports, the statements or reports from a treating or nontreating source, and others about [the claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence." *Robinson*, 2015 WL 4759068, at *1 (internal quotation marks omitted).

evidence, the ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) The ALJ found that Plaintiff had the RFC to perform light work, specifically noting that the evidence of record did not support the existence of work-related limitations that would preclude Plaintiff's performance of substantial gainful activity. (Tr. 21–22) For example, imaging following Plaintiff's 2009 injury revealed only relatively "minor" or "mild" abnormalities with "no evidence of lumber nerve root compression at any level." (Tr. 23, 1129–1132) Moreover, examinations since the alleged onset date did not reveal more significant spinal or left upper extremity abnormalities, or any significant abnormalities of Plaintiff's right upper extremity or bilateral lower extremities. (Tr. 23, 346, 377, 389–90, 435) Although acknowledging Plaintiff's extended period of treatment, the ALJ also identified multiple medical records which reflected normal or full range of motion, motor strength that was "normal or full," sensation described as "intact or normal" and negative straight leg tests on multiple occasions. (Tr. 20, 24) Again citing to the record, the ALJ observed that despite Plaintiff's allegations of severe pain and other symptoms, Plaintiff was consistently described by his treating professionals as in "no distress," "no acute distress" or "no apparent distress" throughout the medical records. (Tr. 24) Plaintiff does not dispute the accuracy of these citations and the Court agrees that the medical records are replete with these medical observations. *See, e.g.*, (Tr. 346) (indicating normal gait in January of 2017); (Tr. 349) (indicating no acute distress in February of 2017); (Tr. 377) (indicating no acute distress and normal gait in November of 2017); (Tr. 390) (indicating normal gait, normal range of motion, normal stability, and normal muscle strength/tone in April of 2017); (Tr. 407) (indicating no acute distress, normal gait, and full range of motion in December of 2016); (Tr. 414–15) (indicating no acute distress, normal gait, full range of motion, no decrease in the range

of motion or strength of the left upper extremity, and a negative straight leg raise test in September of 2016); (Tr. 474) (indicating no acute distress, full range of motion, and normal gait in December of 2016); (Tr. 2349) (indicating normal gait in December of 2014); (Tr. 2495) (indicating steady gait, no distress, and normal range motion of all extremities in October of 2018); (Tr. 2707) (indicating no acute distress in September of 2016); (Tr. 2721) (indicating normal strength in April of 2017); (Tr. 2743) (indicating full strength of all extremities and no distress in June of 2017); (Tr. 2760–61) (indicating negative for back or neck pain, no distress, and normal range of motion in February of 2018). Finally, the additional limitations sought by Plaintiff were not supported by the expert opinion of Dr. Jaslow, which the ALJ found to be persuasive. (Tr. 25) "Ultimately, [i]t is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts" in assessing a claimant's RFC. *Netter v. Astrue*, 272 F. App'x 54, 55 (2d Cir. 2008) (internal quotation mark omitted; alternations in original). The ALJ's RFC determination is supported by substantial evidence.

   3. <u>Any Step Four Error with respect to the ALJ's Determination of Past Relevant Work was Harmless</u>

Finally, Plaintiff argues that the ALJ erred at Step Four in finding that Plaintiff was capable of performing his past relevant work as a landscape laborer because this work does not require the performance of work-related activities precluded by his RFC. Specifically, Plaintiff argues that the ALJ erred at Step Four by identifying his work as a landscape laborer, which he performed in 2002, as past relevant work because it does not qualify as past relevant work under the regulations. *See* 20 C.F.R. §§ 404.1565(a); 416.965(a) ("We consider that your work experience applies when it was done within the last 15 years. . . ."). Plaintiff also argues that the ALJ erred at Step Four by determining that his past relevant work as a landscape laborer was performed at the light exertional

level because it required performance at the heavy exertional level, which is precluded by his RFC. The Commissioner contends that Plaintiff's arguments are immaterial because the ALJ's alternative finding at Step Five renders any error at Step Four harmless. Specifically, the Commissioner argues that the ALJ's alternative Step Five determination that there were a significant number of jobs in the national economy that Plaintiff could have performed in addition to his past relevant work provides alternative grounds for the ALJ's conclusion that Plaintiff was not disabled under the Act. The Court agrees with the Commissioner.

At Step Five, the ALJ found in the alternative that there were a significant number of jobs in the national economy that Plaintiff could have performed aside from his past relevant work. (Tr. 27) Specifically, in reliance on vocational expert testimony, the ALJ found that Plaintiff was capable of performing the requirements of representative light, unskilled occupations such as a maid, cafeteria worker, or mail clerk. (Tr. 28) In light of Plaintiff's capability of making a successful adjustment to other work that exists in significant numbers in the national economy, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. 29)

Even if the Court were to agree with Plaintiff that the ALJ erred at Step Four in finding that Plaintiff was capable of performing his past relevant work as a landscape laborer, the ALJ's alternative Step Five finding that Plaintiff was capable of performing a significant number of jobs in the national economy in addition to his past relevant work renders any error at Step Four harmless. *See Wetzel v. Berryhill*, 783 F. App'x 44, 47 (2d Cir. 2019) ("[E]ven if the ALJ had not . . . [erred in concluding that claimant could perform his past relevant work as a welder], there is 'no reasonable likelihood' that he would have changed his disability decision because the ALJ identified at least three other jobs in the national economy that [claimant] is capable of performing."); *see also Otts*, 249 F. App'x at 890 ("We need not . . . remand this case for further

proceedings at step four because, even if the step four analysis were to be resolved in plaintiff's favor, we would still have to conclude that substantial record evidence supports the ALJ's conclusion at step five that [plaintiff] is not disabled because work exists in significant numbers in the national economy that [he] can still perform . . . . Such evidence was sufficient to allow the Commissioner to carry his burden at step five."). Plaintiff does not challenge on appeal the ALJ's alternative Step Five determination. Accordingly, there is no basis upon which to remand this matter for further findings. *See Wright v. Comm'r of Soc. Sec.*, No. 21-157, 2021 WL 4452158, at *1 (2d Cir. Sept. 29, 2021), *cert. denied sub nom.*, *Wright v. Kijazaki*, No. 21-7068, 2022 WL 1528444 (U.S. May 16, 2022). ("If [claimant] cannot perform his past work . . . he is entitled to benefits unless, at step five, the Commissioner can demonstrate that he has the capacity to perform alternative occupations available in the national economy.") (internal quotation mark omitted); *see Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (finding remand unnecessary where the ALJ's error would not have affected the disability determination).

**Conclusion**

For the foregoing reasons, Commissioner's motion to affirm is GRANTED. (ECF No. 20) Plaintiff's motion to reverse or remand is DENIED. (ECF No. 18) The Clerk of the Court is directed to enter Judgment in favor of the Commissioner and close the file.

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of June 2022.

       /s/ Kari A. Dooley  
       KARI A. DOOLEY  
       UNITED STATES DISTRICT JUDGE